**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**SAMUEL ORTEGA, and**
**REBECCA SCOTT,**

**Plaintiffs,**

**vs.** **No. 1:24-cv-00471-JB-SCY**

**MICHELLE LUJAN GRISHAM, in her official capacity as Governor of the State of New Mexico, and RAÚL TORREZ, in his official capacity as Attorney General of the State of New Mexico,**

**Defendants.**

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF AWARD OF ATTORNEYS' FEES, COSTS, AND NON-TAXABLE EXPENSES PURSUANT TO 42 U.S.C. § 1988**

Governor Michelle Lujan Grisham and Attorney General Raúl Torrez (collectively, "Defendants"), by and through their respective counsel of record, hereby submit their response to Plaintiffs' Motion and Memorandum in Support of Award of Attorneys' Fees, Costs, And Non-Taxable Expenses Pursuant to 42 U.S.C. § 1988 (the "Motion") [Doc. 129]. As grounds for this response, Defendants state as follows:

## INTRODUCTION

Plaintiffs' fee petition requesting *over $1.1 million* exemplifies why courts must "carefully scrutinize" the reasonableness of a request for attorneys' fees and expenses before shifting litigation costs to an opposing party. *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). Plaintiffs seek to have the New Mexico taxpayers pay exorbitant fees generated by a small army of lawyers billing at rates as high as $2,450 per hour (and paralegals billing more than most senior attorneys

in this district), charging for multiple attorneys to attend the same events, billing for clerical tasks, and claiming expenses ranging from hours-long "donor lunches" to luxury travel accommodations. Because the application is riddled with excessive, duplicative, inadequately documented, and non-compensable charges, and because the rates sought bear little resemblance to prevailing rates in New Mexico, the Court should dramatically reduce the requested award if it does not stay consideration of the Motion while Defendants' appeal plays out.

## BACKGROUND

On March 4, 2024, Governor Michelle Lujan Grisham signed House Bill 129 into law, codified as N.M. Stat. § 30-7-7.3, which imposed a seven-day waiting period on firearm purchases, subject to exceptions [Doc. 1]. Plaintiffs filed this action the day the waiting period went into effect, alleging that it violated the Second Amendment and requesting that the law be facially enjoined without limitation. *Id.* Plaintiffs also filed a request for a temporary restraining order and preliminary injunction. [Doc. 2]. After holding a hearing, Judge Browning issued a comprehensive memorandum opinion and order denying Plaintiffs' motion for preliminary injunctive relief. [Doc. 39].

Plaintiffs appealed, and a divided panel reversed Judge Browning's denial of a preliminary injunction. *See Ortega v. Lujan Grisham*, 148 F.4th 1134 (10th Cir. 2025). Defendants sought rehearing en banc, which was denied. *Ortega v. Lujan Grisham*, 162 F.4th 1056 (10th Cir. 2025).[1] The Tenth Circuit subsequently remanded the case back to the district court, and the parties filed

[1] Contrary to Plaintiffs' claims, this does not mean that the en banc court "affirmed" the divided panel's decision. [Doc. 129 at 6]; *see* Bobby R. Baldock, et al., *Strategic Considerations for Going en banc in the Tenth Circuit*, 100 Denver L. Rev. 325, 336 (2023) ("[A] judge's decision to vote against en banc rehearing is not necessarily an endorsement of the panel decision."); *id.* at 340-41 (discussing the "myriad reasons" judges may vote to deny rehearing en banc that are unrelated to the merits).

cross motions for summary judgment. [Docs. 109-110]. Judge Browning issued a short memorandum opinion and order granting Plaintiffs' motion. [Doc. 126]. While he "continue[d] to believe the [waiting period] is constitutional," Judge Browning concluded that he "[was] bound by the Tenth Circuit's decision and the law of the case." *Id.* at 2. Judge Browning denied Plaintiffs' request to enjoin the waiting period in full and instead only issued a narrow injunction applying to the two Plaintiffs. *See id.* at 3. Defendants have since appealed this decision, and Plaintiffs have moved for attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988. [Docs. 128-129].

## DISCUSSION

### I. The Court should stay a determination of fees and costs until Defendants' appeal is resolved

Defendants have noticed their appeal of the Court's final order. [Doc. 128]. Defendants are likely to prevail given that Judge Browning felt bound to follow the *Ortega* majority's preliminary decision that runs counter to earlier, binding precedent. *See* [Docs. 109, 121 (explaining why exceptions to law of the case applied)]. Events following the preliminary injunction appeal have only bolstered this conclusion. *See Beckwith v. Frey*, 171 F.4th 560, 568 n.3 (1st Cir. 2026) (preliminarily upholding Maine's waiting period), *cert. denied* 610 U.S. __ (2026). Indeed, Judge Browning himself recognized that he "continues to believe the Waiting Period Act is constitutional." [Doc. 126 at 2]. Should Defendants prevail on appeal, the Motion will be moot. Accordingly, it is in the interest of judicial economy to stay a determination of fees and costs until the appeal is resolved. *See Yellow Pages Photos, Inc. v. Dex Media, Inc.*, 2021 WL 4428801, at *1 (M.D. Fla. Apr. 5, 2021) (delaying attorneys' fees decision "seems most likely to preserve judicial resources, prevent piecemeal litigation of the issue of an award of attorneys' fees and costs, and promote the interests of efficiency and economy").

## II. The Court should substantially reduce Plaintiffs' requested award of attorneys' fees

### A. Standard of review

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Anchondo v. Anderson, Crenshaw & Assoc.*, LLC, 616 F.3d 1098, 1102 (10th Cir. 2010) (citation modified). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000). Once the court calculates the lodestar amount, it may make adjustments to account for factors such as a plaintiff's overall success level. *See Gen. Protecht Group, Inc. v. Leviton Mfg. Co.*, 122 F. Supp. 3d 1114, 1154 (D.N.M. 2015). A district court's determination regarding the award of fees is a "mixed fact-law application which is itself subject to the general abuse-of-discretion standard." *Robinson*, 160 F.3d at 1280.

### B. Plaintiffs billed for an unreasonable number of hours

"Plaintiffs' burden in an application for attorneys fees is to prove and establish the reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (citation modified). As part of this burden, "[t]he prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* (citation modified). Plaintiffs here have plainly failed to engage in this good faith

effort. Nowhere do any of Plaintiffs' many attorneys state that they have reviewed their billing statements and made any effort to cut excessive, redundant, or unnecessary charges. *See generally* [Doc. 129]. This is unfair to both the Court and Defendants. *See Sinclair v. Meisner*, 185 F.4th 651, 657 (6th Cir. 2026).

Given the voluminous fee application, Defendants respectfully suggest that the Court impose an across-the-board cut to Plaintiffs' fee requests, as opposed to a line-by-line review. *See Sinajini v. Bd. of Educ. of San Juan Cnty. Sch. Dist.*, 53 Fed. Appx. 31, 39 (10th Cir. 2002) (finding no abuse of discretion in the district court's application of an across-the-board reduction); *see generally Fox v. Vice*, 563 U.S. 826, 838 (2011) (cautioning against courts becoming "green-eyeshade accountants" and stating that courts may use estimates).[2] For the reasons discussed below, the Court should impose a 50% reduction to Plaintiffs' fee application. *See Matusick v. Erie County Water Authority*, 757 F.3d 31, 64 (2d Cir. 2014) (upholding a district court's 50 percent across-the-board reduction of hours in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews"); *BCJJ, LLC v. Lefevre*, 2010 WL 1433403, at *6 (M.D. Fla. Mar. 8, 2010) (applying 50 percent across-the-board reduction due to block billing and vague descriptions). Defendants also request that the Court reduce the fee application from Clement & Murphy by an additional 10% to account for their practice of billing by the quarter hour and excessive moot court preparation. This would translate to:

| **Name** | **Proposed Hours** |
|---|---|
| Paul Clement | 0.20 |
| Erin Murphy | 14 |
| H. Bartow Farr | 4.9 |
| Matthew Rowen | 62.6 |
| Kevin Wynosky | 71.4 |
| Amy Nyberg | 6.2 |

[2] Alternatively, if the Court wishes to conduct a line-by-line analysis, Defendants respectfully request the opportunity to submit detailed exhibits laying out exactly which bills are disputed.

| | |
|---|---|
| Chadwick J. Harper | 0.9 |
| Kyle R. Eiswald | 9.9 |
| Ashley Britton | 8.4 |
| Aviana Vergnetti | 2.2 |
| Madeline Levin | 4.4 |
| Ethan Yan | 6.9 |
| Carter Harrison | 71.6 |
| Elise Funke | .1 |
| Benjamin Willhite | .1 |
| Chase DiBono | .2 |
| Judith Kaufman | 2.4 |
| Patricia Hernandez | 0.6 |
| Joseph Greenlee | 63 |
| Michael McCoy | 215.8 |
| William Trachman | 48.8 |
| Sean Nation | 59 |
| Robert Welsh | 64.4 |
| Grady Block | 2.7 |
| Nicole Grunewald | 16.8 |

[Doc. 129-1 at 6-13; Doc. 129-5; Doc. 129-7 at 3; Doc. 129-10].

**1. Block billing**

Attorneys that "intend to seek attorneys' fees under § 1988 [] must keep meticulous, contemporaneous time records to present to the court upon request." *Ramos*, 713 F.2d at 553. Thus, "whenever block-billing is identified—a court generally reduces the number of hours billed because the Court is unable to determine the reasonableness of the specific tasks for which attorney's fees are sought." *Republican Party of New Mexico v. Torrez*, 2024 WL 363188, at *4 (D.N.M. Jan. 31, 2024) (citation modified). Here, the billing entries show numerous instances of substantial block bills. For example, Kevin Wynosky billed $11,475 for 8.50 hours on May 13, 2025, for "Attend oral argument; correspond re same with E. Murphy and M. Rowen; prepare summary of argument; correspond with M. Rowen re same; transfer to and from airports." [Doc. 129-2 at 22; *see also id.* at 15 (March 12, 2025, entry), 42 (May 11, 2026, entry)]. Robert Welsh billed $2,400 for 8 hours on June 26, 2026, for "Prep for Ortega PI hearing in New Mexico and

travel." [Doc. 129-8 at 14]. Michael McCoy billed $3,300 for 6 hours for on June 21, 2024, for "Draft and file expert disclosure, prep for PI hearing, prepare witness examinations and closing argument outline." [Doc. 129-8 at 3]. Matthew Rowen billed $3,625 for 2.5 hours on November 4, 2024, for "Revise, finalize CA10 brief; coordinate filing; confer with J. Greenlee re filing; correspond re same," $10,850 for 7 hours on May 13, 2025, for "prepare for, deliver, debrief oral argument," and $9,075 for 5.5 hours on April 19, 2026, for "Revise MSJ; conference call with co-counsel re same; correspond with E. Murphy re same." [Doc. 129-2 at 5, 22, 39]. A quick review of the billing records reveals many other instances.

**2. Overstaffing and duplicative work**

"Another important factor for consideration when determining the reasonableness of hours expended is the potential duplication of services." *Republican Party*, 2024 WL 363188, at *6 (citing *Ramos*, 713 F.2d at 554). "For example, if three attorneys are present at a meeting or hearing when one would suffice, 'compensation should be denied for the excess time.'" *Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980). "Similarly, if the same task is performed by more than one lawyer, multiple compensation should be denied." *Id.* (citing *Ramos*, 713 F.2d at 554). Here, Plaintiffs utilized *sixteen* attorneys from four law firms and gun rights organizations from across the country, as well as numerous paralegals—leading to substantial overstaffing and duplication. *See* [Doc. 129-1; Doc. 129-4; Doc. 129-7; Doc. 129-9]. For example, four attorneys billed a total of $18,375 for attending the preliminary injunction hearing in person despite only two participating. *See* [Doc. 129-8 at 9 ($4,675), 14 (two entries of $2,400); Doc. 129-10 at 2 (6.2 hours at $700/hour); Doc. 129-5 at 4 ($4,560); Doc. 28 (minutes)]. A jaw-dropping nine attorneys (and one paralegal) billed $47,566.25 for attending the Tenth Circuit oral argument, either in person or virtually, despite only one participating. *See* [Doc. 129-2 at 21-22 (Murphy

billing $1,575, Yan billing $425, Wynosky billing $5,737.50 and $11,475, and Rowen billing $13,175 and $10,850) and; Doc. 129-5 at 9 ($680); Doc. 129-8 at 1 ($510), 5 ($1,200), 12 ($420), 14 ($1,625); Doc. 129-10 at 4 (1.1 hours at $700/hour)].[3] Likewise, six attorneys (and several paralegals) billed over $78,000 for mooting Matthew Rowen. *See* [Doc. 129-2 at 17-21]. And, of course, many billed for reading the same emails and briefs throughout the case.

**3. Clerical work**

"Attorneys and paralegals should not be awarded attorney's fees for clerical work that could easily be performed by support staff. Clerical tasks include, among other things, reviewing court notices, filing documents with the Court, maintaining documents and files, emailing documents, communicating with opposing counsel, scheduling, and booking travel arrangements." *Kunze v. Scott*, 2024 WL 4606800, at *3 (N.D. Tex. Oct. 29, 2024) (citation modified); *see also Gen. Protecht Group, Inc. v. Leviton Mfg. Co.*, 122 F. Supp. 3d 1114, 1148 (D.N.M. 2015) ("[C]lerical work should not be billed at a paralegal rate, regardless of who performs them."). Many billing entries show that Plaintiffs' counsel billed for clerical or non-legal work. *See, e.g.*, [Doc. 129-2 at 5 ($400 for, *inter alia*, filing notices of appearances and $225 for filing brief), 14 ($106.25 for filing acknowledgment), 17 ($1,012.50 for, *inter alia*, updating travel arrangements), 19 ($387.50 for compiling argument prep materials), 25 ($131.25 for filing letter), 32 ($387.50 and $212.50 filing response), 42 ($3,262.50 for, *inter alia*, booking travel); Doc. 129-5 at 4 ($80 for obtaining transcript), 5 ($90 for calendaring), 6 (multiple entries for downloading documents), 7 ($360 for "synthesizing" calendar deadlines), 14 ($45 for, *inter alia*, filing notices), 17 ($405 for

[3] This figure includes amounts billed by Matthew Rowen and Kevin Wynosky on May 12-13, 2025, which likely or expressly includes travel time to Denver, as well as $1,625 billed by Robert Welsh for *five hours* spent attending oral argument and a "donor lunch." *See* [Doc. 129-2 at 21-22; Doc. 129-8 at 14].

compiling and circulating briefs); Doc. 129-8 at 1-2 (multiple entries for filing and calendaring); Doc. 129-8 at 1-2 (multiple entries for calendaring deadlines and filing)].

**4. Overcharging**

When exercising billing judgment, firms should not bill at higher rates for tasks that could have been performed by lower-level staff like paralegals. Thus, "[t]he court may reduce time charges for certain partner work to associate level charges and certain associate work to paralegal level charges where the court concludes that the work could have been performed by junior associates or paralegals[.]" *Joy Mfg. Corp. v. Pullman-Peabody Co.*, 742 F. Supp. 911, 916 (W.D. Pa. 1990). Plaintiffs' billing entries are replete with instances where attorneys charged their full rates for simple tasks that could have been, and should have been, performed by paralegals. *See, e.g.*, [Doc. 129-2 at 9 ($625 for drafting extension motion and $362.50 for revising extension motion), 14 ($675 for, *inter alia*, preparing oral argument acknowledgment notice); 16 ($337.50 for reviewing scheduling order), 29 ($525 for reviewing extension motion and $387.50 for, *inter alia*, reviewing order granting motion), 32 ($387.50 for overseeing filing of document), 43 ($36.50 for reviewing order granting page limit extension); Doc. 129-5 at 2 ($80 for reviewing scheduling order), 5 ($200 for pulling transcript pincites)]; *see generally Callari v. Blackman Plumbing Supply, Inc.*, 2020 WL 2771008, at *12 (E.D.N.Y. May 4, 2020) (explaining that tasks like "review[ing] electronic orders and case management orders, [and] fil[ing] documents on ECF . . . should have been conducted by a paralegal").

**5. Travel time**

Many courts agree that "travel time is appropriately reimbursed at one-half of the determined hourly rate." *Anderson v. Cnty. of Suffolk*, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016); *see generally Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990) (recognizing

trial court discretion to apply a reduced hourly rate to travel time). This is because "[t]ravel time is not equivalent to time exclusively devoted to the case while in one's office." *Wirtz v. Kansas Farm Bureau Services, Inc.*, 355 F. Supp. 2d 1190, 1199 (D. Kan. 2005) (citation modified); *see M.G. v. Armijo*, 2025 WL 2495037, at *4 (D.N.M. Aug. 29, 2025) (imposing 50% cut on travel time since it is "essentially unproductive"). Here, however, Plaintiffs' counsel billed their full hourly rate for traveling to New Mexico or Colorado. *See, e.g.,* [Doc. 129-2 at 21 ($5,737.50 for, *inter alia*, travel); Doc. 129-2 at 22 ($11,475 for, *inter alia*, transfer to and from airports); Doc. 129-5 at 15 ($585 for, *inter alia*, driving to courthouse); Doc. 129-8 at 2 ($2,200 for, *inter alia*, travel time), 9 ($2,090 for, *inter alia*, travel), 14 ($2,400 for, *inter alia*, travel)].[4]

### 6. Redacted and vague entries

Several of Plaintiffs' billing entries are partially redacted to hide who Plaintiffs' counsel conferred with—matters that are not privileged. *See* [Doc. 129-2 at 1 (multiple entries for conferring with unknown persons), 26 ($1,550 for, *inter alia*, conferring with unknown person), 29 ($387.50 for conferring with unknown person), 33-37 (multiple entries of $400+ for, *inter alia*, conferring with unknown persons), 42 ($412.50 for, *inter alia*, conferring with unknown person ]; *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990) ("It is well recognized in every circuit, including our own, that the identity of an attorney's client . . . are not normally protected by the attorney-client privilege."). They also billed for speaking with or about unknown individuals. *See, e.g.*, [Doc. 129-2 at 34, 45 ($825 and $2,887.50 for, *inter alia*, corresponding with "L. Keane"); Doc. 129-5 at 8 ($80 for meeting with "Dawn Amdor"), 16-17 ($135 and $90 for discussing "Jim Gilman"); Doc. 129-8 at 6, 8 ($1,200 and multiple entries of $300

---

[4] It also appears Matthew Rowen billed his full rate for traveling to and from Denver. *See* [Doc. 129-2 at 21-22 (billing $13,175 for 8.5 hours on May 12, 2025, and $10,850 for 7 hours on May 13, 2025, without mentioning travel time)].

corresponding with "Tom Kaye"), 13 (multiple entries for corresponding with "Abbey")]. In addition, many entries are overly vague. *See, e.g.*, [Doc. 129-2 at 13 ($337.50 for "review materials filed in district court"), 20 ($5,550 for "work on issues for moot court"), 35 ($562.50 for "discuss district court proceedings"), 37 ($362.50 for "review district court docket activity"); Doc. 129-8 at 3 ($2,475 for "general case work" and $2,475 for "case work"), 4 (multiple entries for $900 for "review docs for Ortega"), 9 ($275 for "case call"); Doc. 129-10 (multiple entries for "email to group"), 2 (5.4 at $700/hour hours for "Reply Brief")].

Without more information, Defendants and the Court are unable to determine whether these entries are reasonable. *See Terra Energy & Res. Techs., Inc. v. Terralinna Pty. Ltd.*, 2014 WL 6632937, at *5 (S.D.N.Y. Nov. 24, 2014) (finding that entries like "Review pretrial issues," "Telephone Conference with counsel," "Review efiling" and "Review email" were "devoid of even a modicum of information detailing precisely the activities performed by counsel, made it impossible for the Court to determine the relevance, if any, of those activities to this action, or whether the time spent on the particular activity(ies) was reasonable"). For example, Defendants cannot determine whether Plaintiffs' "conferral" with an unknown party is related to this case or one of the many other Second Amendment matters Plaintiffs' counsel are working on or a broader cause.

**7. Non-relevant work**

Because prevailing parties may recover only that time "reasonably expended on the litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), courts will not award fees incurred pursuing other activities such as lobbying, conducting outreach, or engaging in public relations campaigns. *See, e.g., Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) (disallowing fees for lobbying and hosting press conferences); *Kentucky Rest. Concepts Inc. v. City of Louisville*, 117

Fed. Appx. 415, 420 (6th Cir. 2004) (disallowing fees for lobbying); *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 941 (E.D. Mich. 2005) (disallowing fees for media and public relations). But that is exactly what Plaintiffs seek here. Plaintiffs' counsel has billed for a wide variety of non-relevant work, such as reviewing and discussing op-eds, talking to reporters, attending "donor lunches," drafting guidance for the firearms industry, attending "messaging meetings," monitoring other gun-related legislation, and talking to legislators. *See, e.g.*, [Doc. 129-2 at 12 ($525 for exchanging emails about "op-ed"), 14 ($525 for reviewing revisions to "op-ed"), 33 ($387.50 for corresponding with minority leader's office), 35 ($1,650 for listening to legislative hearing), 37 ($2,362.50 for researching proposed legislation on weapons bans and $337.50 for monitoring legislative proceedings); Doc. 129-5 at 12 ($540 for, *inter alia*, listening to senate judiciary committee presentation and $315 for reviewing and discussing other gun-related legislation), 13 ($315 for drafting memo to gun seller staff), 14 ($270 for corresponding with gun seller and $90 for corresponding about "proposed statement to press"), 16 ($405 for meeting with "legislative official" and $1,710 for, *inter alia*, "reviewing news coverage of judgment" and speaking with legislative officials); Doc. 129-8 at 2 ($550 for meeting with gun dealer organization), 5 ($600 for call with "gun store reps"), 6 ($1,800 for drafting article for firearm industry), 8 ($600 for speaking about appearance on radio program), 9 ($275 for messaging meeting), 14 ($75 for interview); Doc. 129-10 at 6 .1 hour at $700/hour for reviewing media request)].

**9. Billing for fixing own mistakes**

"Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Ramos*, 713 F.2d at 553. It follows that attorneys cannot recover fees for fixing their own mistakes. *See Peterson-Hooks v. First Integral Recovery, LLC*, 2013 WL 2295449, at *9 (D. Colo. May 24, 2013). Plaintiffs attempt to do just that, billing for

hours spent addressing deficiency notices and correcting mistakes. *See, e.g.*, [Doc. 129-2 at 6-7 (multiple entries of $300+ for addressing deficiency notice); Doc. 129-5 ($520 for, *inter alia*, "replacing incorrect exhibit")].

**10. Inaccurate or inflated entries**

It is axiomatic that billing entries must be accurate. *See generally Ramos*, 713 F.2d at 553. However, there is reason to doubt many of the ones presented to this Court are. For example, Kevin Wynosky billed $6,250 for 5 hours on November 1, 2024, for allegedly working on a "reply brief" when none was due around the time. [Doc. 129-2 at 3]. Nicole Grunewald billed $375 for 2.5 hours on November 22, 2024, for attending a virtual hearing that lasted one hour. *Compare* [Doc. 129-8 at 2], *with* [Docs. 69-70]. And Matthew Rowen billed $13,175 for 8.5 hours on May 12, 2025, the day he flew from Washington D.C. to Denver, and $10,850 for 7 hours on May 13, 2025, the day he flew back, without mentioning that this includes travel time. [Doc. 129-2 at 21-22]. Counsel has also billed an unreasonable amount of time for simple tasks. For example, Michael McCoy billed $550 for 1 hour drafting a standard motion to withdraw, [Doc. 129-8 at 4], and Sean Nation billed $1,760 for 3.2 hours for researching a straightforward issue of "waiver of right to appeal when you don't contest judgment." [Doc. 129-8 at 9].

**11. Improperly rounding up to quarter hour**

Courts have recognized that "billing in quarter-hour increments is unreasonable since many tasks telephone calls and reviewing documents simply do not take that long." *Swisher v. United States*, 262 F. Supp. 2d 1203, 1216 (D. Kan. 2003) (citation modified). Thus, courts often impose a reduction to address this disfavored practice. *See, e.g.*, *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948-49 (9th Cir. 2007) (affirming district court decision to reduce requested time by 20% to account for use of quarter-hour increments). Here, Clement & Murphy—the firm charging

the lion's share of the fees in this case—bill in quarter-hour increments rather than the local community standard of billing in 6-minute increments. *Compare* [Doc. 129-2], *with* [Doc. 129-5]. Many billing entries appear to have been improperly rounded up to a quarter hour for simple tasks that likely did not take that long. For example, Kevin Wynosky charged .25 hours (amounting to $362.50) for "review order granting page-extension motion." [Doc. 129-2 at 43]. There are many other instances. *See, e.g.*, [Doc. 129-2 at 1-2, 8-9, 12, 15].

**12. Excessive moot court preparation**

In preparing for oral argument before the Tenth Circuit, Clement & Murphy utilized five attorneys (not including the attorney presenting oral argument, Matthew Rowen). [Doc. 129-2 at 17-21]. In addition to utilizing an unreasonable number of attorneys, three attorneys spent an unusually high number of hours preparing to moot Mr. Rowen. Specifically, Kyle Eiswald billed $20,700 for 23 hours preparing for and participating in one moot, Amy Nyberg billed $21,025 for 14.5 hours, and Bartow Farr billed $20,350 for 11.5 hours. *Id.* This is clearly an excessive amount of time for attorneys to spend preparing to moot a colleague for a 15-minute, circuit-level oral argument. *See id.* at 21 (Erin Murphy billing only 3 hours for participating in moot session); *see generally Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) ("Under the fee shifting statute, the losing party is expected to pay for hours reasonably spent in the argument and its preparation, but not for excessive hours, or hours spent in learning or excessively rehearsing appellate advocacy.").

**C. Plaintiffs' hourly rates are unreasonably high for the community**

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224-25 (10th Cir. 2006) (citation modified). "The party entitled to fees must provide the district court with sufficient

information to evaluate prevailing market rates. Moreover, the party must also demonstrate that the rates are similar to rates for similar services by 'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community." *O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1074 (D.N.M. 2018) (citing *Lippoldt*, 468 F.3d at 1225, and *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "New Mexico is a relatively poor state, with some of the lowest hourly rates in the country. This is true even where the attorneys seeking fees do not practice within the district in which they are seeking fees." *Los Alamos Nat'l Bank, N.A. v. Fid. Bank*, 2019 WL 4816692, at *4 (D.N.M. Oct. 1, 2019) (citation modified).

Here, Plaintiffs' out-of-district attorneys and paralegals, particularly the ones at Clement & Murphy, are charging astronomical rates that far exceed the rates of lawyers of reasonably comparable skill, experience, and reputation' in New Mexico. Clement & Murphy is billing $2,450 an hour for Paul Clement (partner), $2,086.26 an hour for Erin Murphy (partner), $1,850 an hour for H. Bartow Farr (partner), $1,548.12 an hour for Matthew Rowen (partner), $1,333.83 an hour for Kevin Wynosky (associate), $1,450 an hour for Amy Nyberg (of counsel), $1,350 an hour for Chadwick J. Harper (associate), $900 an hour for Kyle R. Eiswald (associate), $512.69 an hour for Ashley Britton (senior paralegal), $450 an hour for Aviana Vergnetti (paralegal), $425 an hour for Madeline Levin (paralegal), and $421.15 an hour for Ethan Yan (paralegal). [Doc 129-1]. The National Rifle Association is billing $700 an hour for Joseph Greenlee (attorney). [Doc. 129-9]. And the Mountain States Legal Foundation is billing $550 an hour for Michael McCoy (attorney), $550 an hour for William Trachman (attorney), $550 an hour for Sean Nation (attorney), $300 an hour for Robert Welsh (attorney), $385 an hour for Grady Block (attorney), and $150 an hour for Nicole Grunewald (paralegal). [Doc. 129-8 at 3].

Here, a reasonable rate for an experienced attorney in New Mexico would be, *at most*, $450 an hour. *See M.G.*, 2025 WL 2495037, at *5 (finding $450 an hour reasonable for attorney with 41 years of experience); *Belanger v. Allstate Fire & Cas. Ins. Co.*, 2024 WL 4850334, at *15 (D.N.M. Nov. 21, 2024) (finding $500 an hour "higher than rates courts in this district have recognized as the prevailing market rates in New Mexico"). Indeed, Carter Harrison, the lead local counsel here with significant experience, charges this amount. *See* [Doc. 129-4 at 2]. Likewise, a reasonable rate for an associate attorney with five years or less experience in New Mexico would be, *at most*, $225 an hour. *See J.O. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 2026 WL 2937348, at *3 (D.N.M. Sept. 30, 2026) (finding $225 an hour for an attorney with four and a half years experience "consistent with the market rate for similarly situated attorneys in New Mexico"). And a reasonable rate for an experienced paralegal would be, *at most*, $150 an hour. *See Wilmington Sav. Fund Soc'y, FSB v. Estate of Lowry*, 2026 WL 2211245, at *8 (D.N.M. July 31, 2026); [Doc. 129-4 at 6 (charging $150 an hour for paralegals)]. The Court should reduce the rates of Plaintiffs' out-of-state attorneys and paralegals to match these rates. *See O Centro*, 343 F. Supp. 3d at 1074. This would be:

| **Name** | **Proposed Rate** |
|---|---|
| Paul Clement | $450 |
| Erin Murphy | $450 |
| H. Bartow Farr | $450 |
| Matthew Rowen | $450 |
| Kevin Wynosky | $225 |
| Amy Nyberg | $300 |
| Chadwick J. Harper | $225 |
| Kyle R. Eiswald | $225 |
| Ashley Britton | $150 |
| Aviana Vergnetti | $100 |
| Madeline Levin | $100 |
| Ethan Yan | $100 |
| Joseph Greenlee | $450 |
| Michael McCoy | $450 |
| William Trachman | $450 |

| | |
|---|---|
| Sean Nation | $450 |
| Robert Welsh | $225 |
| Grady Block | $350 |
| Nicole Grunewald | $100 |

The Court should reject Plaintiffs' efforts to be awarded rates that far exceed that of the community. "Unless the subject of the litigation is so unusual or requires such special skills that only an out-of-state attorney possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Lippoldt*, 468 F.3d at 1225 (citation modified). While this case may involve a constitutional issue, many cases do. Plaintiffs have presented no evidence that Second Amendment litigation is "so unusual or requires such special skills" that an experienced civil rights litigator in New Mexico like Carter Harrison, who clerked for Judge Browning, has "extensive experience litigating § 1983 claims for injunctive relief in federal court," and was lead counsel in numerous cases striking involving a variety of important constitutional issues, could not have handled this litigation. [Doc. 129-4 at 2-3]. *See Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 27 (N.D.N.Y. 2015) (refusing to award out-of-district rates to Clement and Murphy for second amendment litigation); *cf. Lippoldt*, 468 F.3d at 1225 (applying local rate to civil rights litigation involving First Amendment); *Ramos*, 713 F .2d at 555 (applying local rate to civil rights litigation involving prison conditions); *Jane L.*, 61 F.3d at 1510 (applying local rate to constitutional challenge of state abortion law).[5] That is especially so for any work following remand, which Judge Browning concluded was dictated by existing caselaw. *See* [Doc. 126]; *New*

[5] Defendants anticipate Plaintiffs may rely on *His Tabernacle Family Church, Inc. v. James*, 2025 WL 2945655, at *6 (W.D.N.Y. Sept. 2, 2025), in reply, in which a district court awarded Plaintiffs' counsel their fees in full. That case is distinguishable. First, the Second Circuit applies a more lenient standard in determining when to award out-of-district rates. *Compare id.* at *6, *with Lippoldt*, 468 F.3d at 1225. Second, that case involved a much more novel issue of the "intersection of the First Amendment's Religion Clauses and the Second Amendment." *Id.* at *9; *see also id.* at *11 (distinguishing case awarding lower fees because it "did not involve any First Amendment claim"); *id.* at *14 (stating that it was a "rare and exceptional case").

*York State Rifle & Pistol Ass'n, Inc. v. Nigrelli*, 2023 WL 6200195, at *4 (N.D.N.Y. Sept. 22, 2023) ("Plaintiffs failed to show that this was a case requiring special expertise and that no in-district counsel possessed such expertise, or that local counsel were unwilling or unable to take the case with specific regard to litigating the matter at the district- and circuit-court levels, where controlling precedent . . . dictated the outcome." (citation modified)).[6]

Even if Plaintiffs had shown that their counsel is entitled to out-of-district rates, they have not shown that they are entitled to the rates they are requesting. Plaintiffs have not presented any evidence that the rates they charge are reasonable for the markets in which these out-of-district firms are based. While they may summarily assert that this is so in their declarations, this is insufficient. *See Nigrelli*, 2023 WL 6200195, at *6 (noting summary statements in declarations but observing that Clement and Murphy have not provided any caselaw to support these statements). Assuming, *arguendo*, the Court awards out-of-district rates, it should award, *at most*, $700 per hour for high level partners and a lower rate for less experienced attorneys and paralegals. *Cf. Nigrelli*, 2023 WL 6200195, at *7 ("[R]ates ranging from $500 to $655 per hour are appropriate for experienced, national experts in specialized areas of law[.]" (citation modified)).

**D. The Court should reduce Plaintiffs' requested award of costs/expenses**

"[O]ut-of-pocket expenses incurred during litigation may be awarded as attorneys fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are

---

[6] Although the court in *Nigrelli* awarded out-of-district rates to some of the attorneys at Clement & Murphy, it did so because their work led to "a groundbreaking decision from the Supreme Court in an area of Second Amendment jurisprudence on which that Court had not yet opined." *Id.* at *5. Plaintiffs here have achieved no such success. Moreover, the court imposed a substantial reduction on the out-of-district rates claimed. *See, e.g.*, *id.* at *12 (awarding $531 per hour to Erin Murphy instead of $1,268.04).

normally billed to a private client, and (2) the expenses are reasonable." *Jane L.*, 61 F.3d at 1517. The Court should further reduce Plaintiffs' award to exclude expenses that Plaintiffs fail to justify.

For starters, the Court should decline to award Plaintiffs' the costs of their travel expenses incurred traveling from Washinton D.C. to Denver for oral argument (including hotels, flights, rideshares, and meals). *See* [Doc. 129-3]. While Plaintiffs summarily claim these expenses are one that Clement & Murphy "ordinarily charges to clients," [Doc. 129-1 at 14], they provided no support for this statement or even receipts showing that these expenses were incurred. *See M.G.*, 2025 WL 2495037, at *4 (declining to award cost for travel expenses to Denver). Even if the Court disagrees, the New Mexico taxpayers should not be forced to pay for Clement & Murphy's $1,242.04 luxury stay at the Four Seasons and expensive $182.68 dinner when the attorney arguing for Defendants was able to secure a hotel across the street from the Tenth Circuit for $353.15 per night and dinner for $55.26. *See* [Doc. 129-3 at 1]; *Barragan v. Sec'y of Health & Human Services*, 2026 WL 2665561, at *3 (Fed. Cl. Aug. 4, 2026) (reducing costs of luxury hotel). They should also not have to pay for Mr. Rowen's $1,530.18 flight to Denver when his associate managed to secure one for nearly half that amount, and defense counsel was able to secure one for $266.92. [Doc. 129-3 at 1]; *Plan Pros, Inc. v. Dultmeier Homes Co.*, 2021 WL 2142653, at *11 (D. Kan. May 26, 2021) ("[A]bsent a showing that local counsel could not have reasonably handled this litigation, travel expenses from their out-of-district counsels' offices to the litigation are denied[.]" (citing *Ramos*, 713 F.2d at 559)).

The Court should also decline to award $200 in costs for "association dues." [Doc. 129-6]. As one court explained, "such fees are an expense of counsel that is not normally passed on to clients, and therefore, it should not be included in a cost award." *Competitive Techs. v. Fujitsu Ltd.*, 2006 WL 6338914, at *4 (N.D. Cal. Aug. 23, 2006). Additionally, the Court should decline

to award the $147.15 fee for service of process when Plaintiffs' counsel did not inquire as to whether Defendants would have waived service (they would have). *Cf. Villarreal v. DeWitt*, 2019 WL 1434657, at *4 (E.D. Ark. Mar. 29, 2019) ("Good cause to avoid an award of fees and costs under Rule 4(d)(2) will exist if the defendant did not receive the request [for waiving service]." (citation modified)). Lastly, the Court should not award the $1,798.54 transcript fee to the extent it reflects fees for expedited processing and late payments. *See* [Doc. 129-6 (noting that transcript fee includes 3-day turnaround fee and late charge)]; *Meier v. UHS of Delaware, Inc.*, 2023 WL 7164909, at *8 (E.D. Tex. Oct. 31, 2023) (declining to award costs associated with expedited processing); *Brannon v. Finkelstein*, 2017 WL 1395171, at *12 (S.D. Fla. Feb. 1, 2017) (declining to award costs associated with "late fees").

## CONCLUSION

For the foregoing reasons, the Court should stay the determination of fees and costs in this matter until Defendants' appeal is resolved or, alternatively, award Plaintiffs a substantially lower amount of fees and costs.

Respectfully submitted,

*/s/ Holly Agajanian*

**HOLLY AGAJANIAN**
*Chief General Counsel*
**KYLE P. DUFFY**
*Deputy General Counsel*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.agajanian@exec.nm.gov
Kyle.duffy@exec.nm.gov

***Attorneys for Governor Michelle Lujan Grisham***

*/s/ Edward L. Marshall*
Billy J. Jimenez
Edward L. Marshall
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
505.490.4825
bjimenez@nmdoj.gov
emarshall@nmdoj.gov

***Attorneys for Attorney General Raúl Torrez***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2026, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Holly Agajanian*
Holly Agajanian